```
        IN THE UNITED STATES DISTRICT COURT
     FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                      CHARLESTON

KATHY ANN SMITH,

      Plaintiff,

v.                                CASE NO. 2:10-cv-00125

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
```

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge. Currently pending before the court is Plaintiff's Motion for Judgment on the Pleadings.[1]

Plaintiff, Kathy Ann Smith (hereinafter referred to as "Claimant"), filed an application for DIB on February 10, 2005, alleging disability as of January 17, 2005, due to narcolepsy, anxiety, depression, fibromyalgia, bursitis and osteoarthritis.

---

[1] The court reminds Plaintiff that pursuant to Local Rule of Civil Procedure 9.4(a), the parties need not file motions in support of judgment on the pleadings.  Instead, Plaintiff should file "a brief in support of the complaint," while Defendant files "a brief in support of the defendant's decision."  Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 9.4(a).

(Tr. at 45-47, 57.)  Claimant's insured status expired on December 31, 2010.  (Tr. at 18.)  The claim was denied initially and upon reconsideration.  (Tr. at 33-37, 40-42.)  Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 43.)  The hearing was held on July 5, 2007, before the Honorable James D. Kemper.  (Tr. at 534-77.)  By decision dated October 25, 2007, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 16-25.)  On December 11, 2009, the Appeals Council considered additional evidence offered by Claimant, but determined it did not provide a basis for changing the ALJ's decision.  (Tr. at 7-10.)  On February 5, 2010, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. § 404.1520 (2007).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. § 404.1520(a).  The

first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 18.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of fibromyalgia, osteoarthritis of the knees, right shoulder pain, depression, anxiety and somatoform disorder. (Tr. at 18.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 20.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 21.) As a result, Claimant cannot return to her past relevant work. (Tr. at 24.) Nevertheless, the ALJ concluded that Claimant could perform jobs such as assembler, inspector and grader/sorter, which exist in significant numbers in the national economy. (Tr. at 25.) On this basis, benefits were denied. (Tr. at 25.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the

>case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-nine years old at the time of the administrative hearing. (Tr. at 537.) Claimant completed the ninth grade. (Tr. at 538.) In the past, she worked as a department supervisor in a department store and as a sales clerk. (Tr. at 540.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

Evidence before the ALJ

On May 23, 2003, Claimant underwent nasal septoplasty and bilateral outfracture of the inferior turbinates. (Tr. at 231-32.)

5

The record includes treatment notes from Huntington Podiatory Associates dated April 30, 2004, through February 28, 2005. (Tr. at 150-59.)  Claimant was treated for right ankle pain, achilles tendinitis, right ankle and subtalar joint sprains, sinus tarsi, subtalar joint synovitis, plantar fasciitis, pereoneal tenosynovitis, peroneal tendinitis and possible subtalar joint capsulitis.

An MRI of the right ankle on December 29, 2004, showed mild tenosynovitis of the flexor hallices longus and brevis tendons distal to the lateral malleolus.  Also, below the level of the sustentaculum tali and beyond (distal to) this, there was evidence of mild tenosynovitis of the flexor digitorum longus tendon. (Tr. at 201.)

The record includes behavioral medicine notes from United Health Professionals dated January 5, 2004, through June 30, 2005. (Tr. at 203-29.)

The record includes treatment notes from Myron Lewis, M.D. dated February 7, 2005, through March 1, 2005.  (Tr. at 160-62.) Dr. Lewis treated Claimant for near syncope, which was possibly anxiety related.  (Tr. at 162.)  An echocardiogram showed no pericardial effusion or thrombus.  (Tr. at 161.)

On March 10, 2005, Claimant underwent arthroscopy of the left shoulder, subacromonial decompression, lateral clavicle excision and insertion of indwelling pain catheter for future pain

management. (Tr. at 163.)

On April 19, 2005, Robert G. Martin, M.A. examined Claimant at the request of the State disability determination service. Mr. Martin diagnosed dysthymic disorder, panic disorder without agoraphobia and narcolepsy on Axis I and made no Axis II diagnosis. (Tr. at 169.)

Claimant underwent physical therapy on her shoulder and ankle. (Tr. at 171-76.)

On May 16, 2005, a State agency medical source completed a Psychiatric Review Technique form and opined that Claimant's mental impairments were not severe. (Tr. at 177-90.)

On May 26, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform medium work. (Tr. at 191-98.)

An MRI of the cervical spine on June 18, 2005, showed mild to moderate spondylosis at C5-6 with left sided asymmetric foraminal narrowing, but no focal disc herniation. (Tr. at 199.)

An MRI of the brain on June 18, 2005, was normal. (Tr. at 200.)

On July 26, 2005, Claimant underwent a functional capacity evaluation. (Tr. at 234-37.)

The record includes additional treatment notes from Dr. Lewis dated January 7, 2004, through October 17, 2005. (Tr. at 238-52.) Claimant was treated for fibromyalgia with well documented sleep

disturbance, primary osteoarthritis, sleep disturbance, depression, panic disorder, headaches, cervical radiculitis, hypertension, and myalgias. (Tr. at 250.)

Cardiovascular ultrasound on May 3, 2005, showed moderate intimal thickening of the carotid artery systems bilaterally without significant occlusive disease. There was antegrade vertebral flow bilaterally. (Tr. at 242.)

The record includes treatment notes from James B. Cox D.O. dated November 29, 2004, through October 19, 2005. (Tr. at 253-82.) He and others treated Claimant for bilateral osteoarthritis in the knees, impingement syndrome of the shoulders, and chronic right ankle sprain.

On October 21, 2005, a State agency medical source completed a Mental Residual Functional Capacity Assessment and rated Claimant's abilities as moderately limited in several areas. (Tr. at 283-86.)

A State agency medical source completed a Psychiatric Review Technique form on October 21, 2005, and opined that Claimant's severe mental impairments result in mild restriction in activities of daily living and maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and no episodes of decompensation. (Tr. at 297.)

On October 25, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that

8

Claimant could perform light work with occasional postural limitations (except for an inability to climb ladders, ropes and scaffolds), a limited ability to reach in all directions, a need to avoid even moderate exposure to vibration and a need to avoid concentrated exposure to extreme cold and heat and hazards. (Tr. at 301-08.)

The record includes treatment notes from West Virginia Foot Care dated February 2, 2006, through April 14, 2006. (Tr. at 310-18.) Claimant was treated for heel pain and plantar fasciitis.

The record includes treatment notes from Arturo Roa, M.D. dated November 14, 2002, through August 15, 2006. (Tr. at 320-39.) Dr. Roa treated Claimant for obstructive sleep apnea, goiter, asthma, deviated septum, allergic rhinitis, bronchitis, sinusitis, allergic asthma and laryngopharyngeal reflux disease.

The record includes treatment notes from Jack R. Steel, M.D. and others dated June 13, 2006, through November 14, 2006. (Tr. at 340-45.) Claimant was treated for a right sprained ankle with probable history of instability and impingement syndrome of the right shoulder. Claimant was to undergo arthroscopy of the right shoulder.

The record includes treatment notes and other evidence from David L. Weinsweig, M.D. dated August 2, 2005, through September 7, 2005. Claimant's MRI showed mild to moderate spondylosis at C/5-6. Dr. Weinsweig felt that Claimant suffered from chronic pain and

that surgical intervention was not warranted. Dr. Weinsweig recommended a bone scan, x-rays and EMG/nerve conduction studies of the upper extremities. (Tr. at 357.) EMG and nerve conduction studies were normal. (Tr. at 356.) A bone scan showed mild increased uptake within the maxillary regions, presumably secondary to sinusitis, however, clinical correlation was needed. There was also uptake about the shoulders, left knee, and feet, presumably degenerative in etiology. (Tr. at 355.) X-rays of the cervical spine showed mild degenerative changes. (Tr. at 354.) Dr. Weinsweig wrote on September 7, 2005, that he did not see anything "dangerous or serious" that he would recommend any surgery upon. Instead, he prescribed physical therapy. (Tr. at 353.)

On a functional capacity evaluation, Claimant tested at the sedentary physical demand characteristics level. (Tr. at 360.)

The record includes treatment notes from United Health Professionals, Behavioral Medicine dated June 10, 2002, through November 1, 2006. (Tr. at 362-92.) Claimant was treated for major depressive disorder, recurrent and severe psychotic features, generalized anxiety disorder, rule out Obsessive Compulsive Disorder ("OCD"), rule out social phobia, rule out Obstructive Sleep Apnea ("OSA"), rule out bipolar disorder and narcolepsy.

The record includes additional treatment notes from Dr. Lewis dated March 16, 2006, through November 14, 2006. (Tr. at 393-98.) Dr. Lewis treated Claimant for uncontrolled hypertension,

10

eventually brought under control, right shoulder pain, lymphadenopathy, most likely infectious mononucleosis and lumbago.

Evidence Submitted to the Appeals Council

The record includes additional physical therapy treatment notes dated October 15, 2007, through April 8, 2008. (Tr. at 401-22.)

Claimant submitted additional treatment notes from Dr. Lewis dated October 17, 2005, through June 28, 2007. (Tr. at 423-33.) Dr. Lewis treated Claimant for lumbago with a lumbar soft tissue mass, mixed type hyperlipidemia, lumbar radiculitis, right shoulder pain, and hypertension.

On March 11, 2008, Claimant underwent x-rays of the lumbar spine that showed minor degenerative changes at L4. (Tr. at 434.)

The record includes treatment notes and other evidence from the Cabell Huntington Hospital Regional Pain Management Center dated May 16, 2008, through December 1, 2008. Claimant underwent facet nerve block injections. (Tr. at 435-71.)

The record includes Behavioral Medicine Notes from United Health Professionals dated June 10, 2002, through September 13, 2007. (Tr. at 472-533.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly consider Claimant's impairments in combination, including

11

syncope issues, narcolepsy, migraines, neck condition and ankle problems; and (2) the ALJ erred in assessing Claimant's pain and credibility. (Pl.'s Br. at 9-13.)

The Commissioner argues that (1) substantial evidence supports the ALJ's residual functional capacity assessment; (2) the ALJ properly addressed each of Claimant's diagnosed impairments; and (3) the ALJ reasonably concluded that Claimant was not fully credible. (Def.'s Br. at 9-12.)

Claimant first argues that the ALJ failed to consider the combination of her impairments, including syncope issues, narcolepsy, migraines, a neck condition and ankle problems.

The social security regulations provide,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 404.1523 (2007). Where there is a combination of impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on

the ability of the claimant to engage in substantial gainful activity. <u>Id.</u> The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. <u>DeLoatche v. Heckler</u>, 715 F.2d 148, 150 (4th Cir. 1983).

The court finds that the ALJ properly considered Claimant's impairments, both alone and in combination as reflected in his finding at steps two and three of the sequential analysis, as well as in his residual functional capacity finding and in the hypothetical question to the vocational expert.

At least two of the conditions about which Claimant complains, narcolepsy and an ankle impairment, were found to be nonsevere. (Tr. at 19.) Nevertheless, the ALJ considered these impairments, as well as Claimant's complaints related to neck pain, and their resulting limitations in assessing Claimant's subjective symptoms and her credibility. Social Security Ruling ("SSR") 96-8p, 1996 WL 362207, *34477 (1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe.").

While the ALJ does not specifically mention syncope issues or migraines, this does not result in reversible error. The ALJ's decision is a thorough one, and Claimant offers no evidence as to the limiting effects of these conditions. In fact, the substantial evidence of record indicates that Claimant can engage in a significant number of jobs in the national economy given her

13

limitations.

The court further finds, contrary to Claimant's assertions otherwise, that the ALJ's pain and credibility findings are consistent with the applicable regulations, case law and SSR and are supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ found that Claimant has conditions that could reasonably be expected to produce the pain alleged. (Tr. at 23.) The ALJ proceeded to the second step in the pain analysis, and his decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, precipitating and aggravating factors and Claimant's medication. (Tr. at 22-23.)

The ALJ ultimately concluded that Claimant's subjective complaints were not entirely credible, citing Claimant's failure to follow a prescribed home exercise program, Claimant's failure to exert maximal effort on a physical capacity evaluation, inconsistent information about her daily activities and a lack of medication other than for her narcolepsy. Finally, the ALJ noted that the record was held open for over two months to allow Claimant to submit additional evidence from treating sources at United Health Professionals, but none was forthcoming. Thus, the ALJ concluded that Claimant's "allegations of pain, sleep difficulties, depression, anxiety, and osteoarthritis are deemed excessive, not

fully credible, and are treated accordingly." (Tr. at 23.)

Claimant eventually did submit additional evidence to the Appeals Council, and the Appeals Council incorporated this evidence into the record. As such, pursuant to <u>Wilkins v. Secretary</u>, 953 F.2d 93 (4th Cir. 1991), the court must review the record as a whole, including the new evidence submitted to the Appeals Council, in order to determine whether the ALJ's decision is supported by substantial evidence. In <u>Wilkins</u>, our Court of Appeals stated that

> "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the Secretary's decision is supported by substantial evidence." *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972); *see* 42 U.S.C.A. § 405(g). The Appeals Council specifically incorporated Dr. Liu's letter of June 16, 1988 into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.

<u>Id.</u>

The court has reviewed the evidence submitted to the Appeals Council. In many instances it is duplicative of the evidence already before the ALJ. Where it is new evidence, much of it post dates the ALJ's October 25, 2007, decision or does not provide a basis for changing the ALJ's decision. Even considering the evidence submitted to the Appeals Council, the ALJ's decision is supported by substantial evidence.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this

day, the Plaintiff's Motion for Judgment on the Pleadings is DENIED the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 3, 2011

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge